IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LARRY BROWN, | § | |
| | § | |
| Debtor. | § | |
| _____ | § | |
| | § | |
| INDUSTRIAL BANK N.A., | § | |
| | § | |
| Appellant, | § | |
| | § | |
| VS. | § | NO. 4:05-CV-035-A |
| | § | |
| LARRY BROWN, ET AL., | § | |
| | § | |
| Appellees. | § | |

MEMORANDUM OPINION
and
ORDER

This action comes before the court as an appeal from an order of the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, the Honorable Dennis Michael Lynn presiding. The court, having considered the briefs of appellant, Industrial Bank N.A., and appellee City Bank[1], the record on appeal, and applicable authorities, finds that the bankruptcy court's order should be reversed for the reasons given below.

I.

Jurisdiction

The appeal is from an order sustaining an objection to appellant's secured claim and denying its alternative motion to

_____

[1]Appellee Larry Brown, the debtor, has not filed a brief or anything else in response to appellant's brief on appeal.

annul automatic stays.  The court is satisfied that the order is final and appealable.  See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1284 (2d Cir. 1990).  This court's jurisdiction exists pursuant to 28 U.S.C. § 158.

II.

Underlying Proceedings

The description of pertinent facts given by the bankruptcy court is sufficient for purposes of this opinion:

On August 5, 2002, Debtor [appellee Larry Brown] filed a voluntary petition ("Case 1") under chapter 13 of the Bankruptcy Code.  Case 1 was initially dismissed on October 16, 2002; reinstated on November 19, 2002, pursuant to a timely motion; and finally dismissed on May 21, 2003.  Although City Bank was not listed as a creditor on Debtor's original schedules, City Bank filed a Notice of Appearance and Request for Service of Papers as "a creditor of, and a party in interest in this [Case 1]" on December 11, 2002, and filed a proof of claim on January 27, 2003.  Industrial Bank was not listed as a creditor of Debtor and did not receive notice of Case 1.  During the pendency of Case 1, Industrial Bank sued Debtor on September 23, 2002; obtained a default judgment (the "Judgment") on February 10, 2003, and recorded the Judgment against Debtor on March 28, 2003.

On June 3, 2003, thirteen days after dismissal of Case 1, Debtor filed a voluntary petition ("Case 2") under chapter 11 of the Code.  Case 2 was dismissed on January 7, 2004.  City Bank was listed by Debtor on Schedule D as a secured creditor and on Schedule F as an unsecured nonpriority creditor.  Industrial Bank was not listed as a creditor of Debtor and did not receive notice of Case 2.  During the pendency of Case 2, Industrial Bank obtained in connection with the Judgment a writ of execution against Debtor on June 25, 2003, and gave Debtor notice of levy under the writ of execution on August 28, 2003.

On February 27, 2004, fifty-one days after dismissal of Case 2, Debtor filed the above-captioned chapter 11 case ("Case 3").  City Bank was listed by

2

> Debtor on Schedule D as a secured creditor and on
> Schedule F as an unsecured nonpriority creditor.
> Industrial Bank was not listed as a creditor of Debtor
> and did not receive notice of Case 3.  On March 19,
> 2004, during the pendency of Case 3, Industrial Bank
> obtained in connection with the Judgment an order
> granting post-judgment sanctions against Debtor.
>
>     On March 26, 2004, Industrial Bank received notice
> of Case 3 and in April 2004 learned of Debtor's Case 1
> and Case 2.  On May 20, 2004, Industrial Bank filed in
> Case 3 a secured creditor Proof of Claim based on the
> Judgment.

Nov. 10, 2004, Mem. Op. & Order at 2-3 (footnote omitted).  The

August 2003 levy under the writ of execution was on a deferred

compensation contract debtor had with the Oakland Raiders.

City Bank objected to appellant's claim, asserting that all

actions taken by appellant during the pendency of Cases 1 and 2

were in violation of the automatic stays.  City Bank requested

the bankruptcy court to disallow appellant's claim as a secured

claim and, at best, to allow the claim as an unsecured claim.

Appellant, on the other hand, filed an alternative motion to

annul the automatic stays as to Cases 1 and 2 retroactively so

that its claim would be secured.  Also, appellant argues that

City Bank lacked standing to challenge appellant's claim.  Three

days before the hearing, debtor, appellee Larry Brown, filed

documents by which he joined in City Bank's filings.

On September 27, 2004, the bankruptcy court held a hearing

to consider motions filed by appellant and City Bank.  After

considering supplemental materials filed by the parties, on

November 10, 2004, the bankruptcy court issued its memorandum

opinion and order (a) sustaining the objection to appellant's

secured claim, (b) denying appellant's motion to annul the automatic stays, (c) denying as moot City Bank's alternative motion for authority to avoid post-petition attachment of appellant's security interest, and (d) allowing appellant's claim as a general unsecured nonpriority claim.  Appellant appeals from that order.

### III.

### Issues on Appeal

Appellant sets forth six issues on appeal.  They are:

(1)  whether the bankruptcy court erred in sustaining City Bank's objection to the secured status of appellant's claim;

(2)  whether City Bank did not have the requisite legal standing to object to appellant's claim;

(3)  whether the bankruptcy court erred in failing to find that a challenge to the post-petition fixing of appellant's lien was time-barred pursuant to 11 U.S.C. § 549 and In re Pointer, 952 F.2d 82 (5th Cir. 1992);

(4)  whether the bankruptcy court erred in failing to find that the dismissal of debtor's previous bankruptcy cases voided the automatic stays and validated any action taken by appellant while the previous cases were pending;

(5)  whether, in view of the undisputed evidence presented by appellant, the bankruptcy court erred in failing to find cause to annul the automatic stay and grant appellant's motion to annul the automatic stay; and

4

(6) whether the bankruptcy court erred in determining that the debtor's untimely joinder in City Bank's objection to appellant's claim and alternative motion for authority to avoid post-petition attachment of alleged security interest of appellant rendered the issue of City Bank's standing moot.

IV.

Discussion

A.   Whether Standing is an Issue.

Appellant contends City Bank lacks standing to contest appellant's secured claim, relying on City of Farmers Branch v. Pointer (In re Pointer), 952 F.2d 82 (5th Cir. 1992). Pointer, however, is not in point as to City Bank's contest to appellant's claim. There, the court focused its attention on standing under 11 U.S.C. § 549. Here, City Bank's standing is established pursuant to 11 U.S.C. § 502(a), which authorizes "any party in interest" to object to a claim.[2] Moreover, debtor's joinder in City Bank's objection to appellant's claim renders moot the issue of City Bank's standing. The bankruptcy court did not err in giving effect to debtor's joinder.

B.   The Dismissals of Cases 1 and 2 Had the Effect of Nullifying the Stay as to Actions Appellant Took During Pendency of Those Cases.

Automatic stays pursuant to 11 U.S.C. § 362 were in effect during the pendency of Cases 1 and 2. See Bustamante v. Cueva

---

[2]Because the court has upheld City Bank's right to object to appellant's claim, the motion City Bank filed September 16, 2004, titled "City Bank's Alternative Motion for Authority to Avoid Post-Petition Attachment of Alleged Security Interest of Industrial Bank, N.A.," continues to be moot.

5

(In re Cueva), 371 F.3d 232, 236 (5th Cir. 2004).  Actions taken
by appellant against debtor or his property while those stays
were in effect were subject to the stays even though appellant
had no knowledge that the cases had been filed.  Id.  Appellant's
actions, when they were taken, against debtor and his property
during the pendency of the cases were voidable.  See Sikes v.
Global Marine, Inc., 881 F.2d 176, 178 (5th Cir. 1989) (saying
"[w]e are persuaded that the better reasoned rule characterizes
acts taken in violation of the automatic stay as voidable rather
than void").  See also Picco v. Global Marine Drilling Co., 900
F.2d 846, 850 (5th Cir. 1990).

        In a footnote in Jones v. Garcia (In re Jones), a panel of
the Fifth Circuit explained that the statements in Picco and
Sikes that actions taken in violation of the stay are voidable,
and not void, really mean that "[i]t is the effect of the stay
itself which is voidable, subject to the broad discretion
afforded a bankruptcy court under section 362."  63 F.3d 411, 413
n.3 (5th Cir. 1995).  Regardless of the meaning the respective
panels of the Fifth Circuit had in mind when they made the
"voidable" statements in Picco and Sikes, the end result would be
the same--actions taken in violation of the stay are subject to
being cleansed of the effect of the stay by subsequent action of
the bankruptcy court.  See Chapman v. Bituminous Ins. Co. (In re
Coho Res., Inc.), 345 F.3d 338, 344 (5th Cir. 2003) (expressing
the view of the Fifth Circuit in 2003 that "violations [of the
automatic stay] are merely 'voidable' and are subject to

                                    6

discretionary 'cure'").  Such a view is consistent with the

primary function of a § 362 stay, for, as one court explained:

> The primary function of the § 362 stay is to protect
> the assets of the estate for the benefit of creditors,
> so that an equitable distribution according to the
> statutory scheme can be effected.  Upon dismissal, the
> need for this protection is eliminated.  [Title 11
> U.S.C. §] 349(b) recognizes this fact in its
> "reinstatement" of all transfers avoided during the
> pendency of the proceeding.

In re Linton, 33 B.R. 695, 697 (Bankr. D. Idaho 1983).

In Linton, the court relied on 11 U.S.C. § 349(b) when

recognizing as valid voidable action taken against the debtor's

property during existence of the automatic stay, explaining that

the court found "no policy of the Code thwarted by this

recognition . . . ."  Id.[3]

_____

[3]Title 11 U.S.C. § 349(b) reads:

    (b)  Unless the court, for cause, orders otherwise, a
dismissal of a case other than under section 742 of this
title--

        (1)  reinstates--

            (A)  any proceeding or custodianship
        superseded under section 543 of this title;

            (B)  any transfer avoided under section
        522, 544, 545, 547, 548, 549, or 724(a) of this
        title, or preserved under section 510(c)(2),
        522(i)(2), or 551 of this title; and

            (C)  any lien voided under section 506(d)
        of this title;

        (2)  vacates any order, judgment, or transfer
    ordered, under section 522(i)(1), 542, 550, or 553 of
    this title; and

        (3)  revests the property of the estate in the
    entity in which such property was vested immediately
    before the commencement of the case under this title.

The court has concluded that 11 U.S.C. § 349(b) caused the dismissals of Cases 1 and 2 to have the effect of validating actions taken by appellant during the pendency of those cases. In other words, the orders of dismissal of Cases 1 and 2, when considered with § 349(b), were orders of the bankruptcy court that annulled whatever effect the automatic stays resulting from those cases otherwise had on actions taken by appellant. As the court deciding Shell Oil Co. v. Capital Financial Services explained:

> Liens that violate the automatic stay are voidable at the trustee's discretion, but they are not automatically void. When a bankruptcy is dismissed, the property of the estate revests in the entity that held the property immediately before the case began. 11 U.S.C. § 349(b)(3). The dismissal also ends the automatic stay and it acts, in effect, as a grant of relief from any automatic stay . . . .
>
> If the automatic stay was in effect when the IRS filed its lien against Gibson, the dismissal of the bankruptcy case terminated the stay and vested the interpleaded funds in Gibson. Since the trustee of Gibson's bankruptcy estate never avoided the IRS lien, the dismissal, essentially, acts as a grant of relief from the stay. Rather than void the lien, the dismissal voids the stay, and voids it from its inception. . . .

170 B.R. 903, 906 (S.D. Tex. 1994) (citations and internal quotation marks omitted). See also Norton v. Hoxie State Bank, 61 B.R. 258, 260 (D. Kan. 1986) (recognizing that "[a] dismissal of a bankruptcy case acts, in effect, as a grant of relief from any automatic stay previously in effect").

The effect of § 349(b), which is subject to interpretation, was clarified by the following legislative history:

> The basic purpose of [§ 349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.

S. REP. NO. 95-989, at 49 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5835.  For Cases 1 and 2 to be undone as to appellant, the effect of the stays on actions taken by appellant during the pendency of those cases would have to be negated.  And, for appellant's rights to be restored to the positions they enjoyed at the commencement of Cases 1 and 2, appellant would have to be given the benefit of actions appellant took in the exercise of those rights during the pendency of those cases.

The court recognizes that there is case authority that supports City Bank's argument that dismissal of a bankruptcy case does not validate action taken in violation of the automatic stay.  See Elbar Inv., Inc. v. Pierce (In re Pierce), 272 B.R. 198, 211 (Bankr. S.D. Tex. 2001);  In re Prine, 222 B.R. 610, 613 (Bankr. N.D. Iowa 1997); In re Lampkin, 116 B.R. 450, 453 (Bankr. D. Md. 1990).  The court respectfully disagrees with the conclusions reached in those cases on the subject under discussion.  Of possible significance, the In re Prine and In re Lampkin courts thought it important to their decisions to ascertain whether the actions taken in violation of a stay were void or voidable, and each court ruled as it did because its circuit had held that actions taken in violation of a stay are void.  The In re Lampkin court mentioned that "[t]he Fifth

9

Circuit believes that violations of the stay are voidable,"
citing <u>Sikes</u>.  116 B.R. at 451.  The holding in <u>In re Pierce</u>
seems to have been influenced by a principle of Texas real
property law "that a judicial sale in violation of Bankruptcy
Code section 362 has no effect, even if the parties did not have
notice of the stay, unless a bankruptcy judge grants retroactive
relief from the stay."  272 B.R. at 210.

The bankruptcy court agreed with appellant that debtor
should not be allowed to benefit from the protections of the
automatic stays applicable to Cases 1 and 2, but concluded that
City Bank and other creditors in Case 3 "should not suffer a
detriment because Debtor failed to give notice of its bankruptcy
filings to [appellant]."[4]  Mini-Record, Vol. 1 at 9.  In the
course of concluding that appellant's claim should not be allowed
as a secured claim, the bankruptcy court explained:

> Because allowance of the Judgment as a secured claim
> (1) would improve Industrial Bank's creditor status to
> the prejudice of City Bank and those other creditors
> obedient to the mandates of the automatic stay and (2)
> would not further the purposes of the Code and the
> equitable distribution of Debtor's assets among
> creditors, the court is convinced that the Judgment

---

[4]The court is unable to find anything in the record showing that
treating appellant's claim as a secured claim would cause City Bank
or any other creditor in Case 3 to suffer any detriment because
debtor failed to give notice to appellant of his filings of Cases 1
and 2.  There is nothing in the record to reflect that appellant
gained an unfair advantage because it did not have notice of the
automatic stays--there is nothing in the record to show that City
Bank or any other creditor would have done anything to improve their
respective positions as creditors if they had not known of the
automatic stays or if Cases 1 and 2 had not been filed.

       should not be allowed as a secured claim with a
       perfected lien against the deferred contract proceeds.

Id. Those comments of the bankruptcy court would appear to be
appropriate to a discussion of appellant's alternative motion to
annul the automatic stay, the resolution of which could take into
account equitable considerations.  However, there is no hint in
the language of § 349 or its legislative history that the
cleansing effect of the dismissal of a case under Title 11 is
dependent on factors such as those to which the bankruptcy court
directed its attention.  As introductory language of § 349(b)
suggests, the effect of the statute can be modified on a case-by-
case basis "for cause," but that modification would have to be
made at the time and as a part of the dismissal of the case.

     City Bank focuses in its brief on what it characterizes as
appellant's "wrongful conduct" and "improper head start,"
Appellee's Br. at 16, implying that appellant engaged in improper
conduct when it took the actions about which debtor and City Bank
complain.  But, there is no evidence that appellant had knowledge
of the stays when it took those actions; and, the findings of the
bankruptcy court on that subject, which are not challenged, are
that appellant did not have knowledge of the stays.  Supra at 2-
3.  Moreover, the court is of the belief that knowledge of the
stays, vel non, is not relevant to the issue under discussion.
But, the court is not expressing an opinion as to what
appellant's rights would be if it had knowingly violated the
stays.

For the reasons given above, the court concludes that the actions taken by appellant during the stays related to Cases 1 and 2 should be given effect, and that the bankruptcy court erred in failing to do so.  Because the court's ruling is based on the effect of § 349(b), the court is not required to reach issues related to appellant's alternative motion to annul automatic stays as to Cases 1 and 2, and declines to do so.[5]

V.

Order

For the reasons discussed herein,

The court ORDERS that the order of the bankruptcy court sustaining the objection to appellant's secured claim be, and is hereby, reversed.

The court further ORDERS that the bankruptcy court treat appellant's claim as a secured claim by giving appellant the benefit of actions appellant took during the pendency of Cases 1 and 2, including, but not limited to, the obtaining of a default judgment on February 10, 2003, recording that judgment on March 28, 2003, obtaining a writ of execution against debtor on June

---

[5]The court does note, however, that the bankruptcy court appears to have been incorrect in its statement that appellant's allegations relative to its expenditures are unsubstantiated.  See Mini-Record, Vol. 1 at 11.  There was testimony that appellant incurred legal fees in excess of $80,000.00 in connection with its collection actions. R. at 328.

25, 2003, and giving debtor and the Oakland Raiders notice of

levy under the writ of execution on August 28, 2003.

     SIGNED June ___21___, 2005.


             ____/s/ John McBryde_____
             JOHN McBRYDE
             United States District Judge